# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:11cr176 (SRU) |
| JONATHAN BROWN | |

## RULING ON MOTION TO SUPPRESS

Jonathan Brown has moved to suppress bullets that were seized pursuant to an investigatory detention. Because the officers had reasonable suspicion to believe that Brown was involved in criminal activity in connection with those bullets, and because the officers' investigation was swift and diligent, the motion to suppress, doc. 35, is DENIED.

### I. Background[1]

As captured on courthouse video surveillance, on September 9, 2011, at approximately 3:40 p.m., Brown entered the United States Courthouse in Bridgeport, Connecticut. Brown was carrying papers in his hand, and a black bag over his shoulder. Once inside, Brown encountered the courthouse's court security officers ("CSOs"). Brown told CSO Don Wilson that he was going to the Internal Revenue Service Office, and Wilson instructed Brown to empty his pockets and place his bag on the x-ray machine conveyer belt. Brown complied, and Wilson instructed him to walk through the metal detector.

At that time, CSO Thomas Rodia was manning the x-ray machine. As Brown's bag passed through the x-ray machine, Rodia saw the image of six small objects appear on the screen. Rodia believed those objects to be bullets, and asked Brown what they were. Brown

---

[1] Unless otherwise noted, the following facts are undisputed. Because this motion does not turn on the resolution of disputed questions of fact, I have elected not to hold a suppression hearing.

replied that he could not identify them, and Rodia informed him that they were bullets. Brown then stated that he did not need to go to the IRS Office after all, and attempted to retrieve his bag. The CSOs in the area detained Brown, and searched his bag. Inside, the CSOs found a small cloth bag that contained six rounds of ammunition.

After seizing the ammunition, the CSOs called Deputy U.S. Marshals ("Marshals") to the area. Marshals James Masterson and Michael Moore responded to the call. Masterson asked Brown about his identity and if he had a criminal record or was on probation. Brown stated that he did not, and was not. Moore patted down Brown for weapons, and did not find any.

Masterson then returned to the Marshal's office on the second floor of the courthouse, and searched for Brown's criminal history. As a result of that search, Masterson discovered that Brown had been convicted of at least one prior felony. The Marshals then contacted an Assistant United States Attorney, who prepared a criminal complaint. Magistrate Judge William Garfinkel authorized the arrest of Brown, who was then arrested. Brown has been indicted on one count of Possession of Ammunition by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a).

## II. Discussion

Brown does not contest the initial search of his bag as a precondition to entry of the courthouse. He also does not contest the further search of his bag or person, or his initial detention. Instead, Brown argues that once the CSOs and Marshals were satisfied that he did not have a dangerous weapon in his possession, his detention should have ended. Brown also argues that his bullets should not have been seized, because it was not immediately apparent that they were contraband.

Officers may briefly detain someone when they have a reasonable and articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Determining the reasonableness of a *Terry* stop is a two-part inquiry: courts must first determine whether the original stop was warranted, and then determine whether the scope and duration of the investigative detention were reasonable. *United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995).

In reviewing whether an initial *Terry* stop was warranted, courts must "look to the totality of the circumstances to see whether the officer had a 'particularized and objective basis' to suspect criminal activity." *United States v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). The officers "must be able to point to specific and articulable facts which, taken with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21. Officers are entitled to draw on their "own experience and specialized training to make inferences from and deductions about the cumulative information available to [them] that might well elude an untrained person." *United States v. Muhammad*, 483 F.3d 115, 121 (2d Cir. 2006) (quoting *Arvizu*, 534 U.S. at 273). "The requisite level of suspicion is 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Tehrani*, 49 F.3d at 58 (quoting *United States v. Glover*, 957 F.2d 1004, 1007 (2d Cir. 1992)).

"[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119 (2000). "Even conduct that is 'as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity.'" *Padilla*, 548 F.3d at 187 (quoting *United States v. Villegas*, 928 F.2d 512, 516 (2d Cir. 1991)). "*Terry* recognized that a

'series of acts, each of them perhaps innocent in itself,' can when 'taken together warrant[ ] further investigation.'" *Id.* (quoting *Terry*, 392 U.S. at 22).

The undisputed evidence demonstrates that Brown brought six bullets into a federal courthouse, initially failed to identify the bullets as such, and attempted to leave the courthouse when informed by officers that the items were bullets. An individual's apparent discomfort with the presence of an officer and evasive behavior can be grounds for reasonable suspicion. *See United States v. Welbeck*, 145 F.3d 493 (2d Cir. 1998), *cert. denied*, 525 U.S. 892 (1998). Given the totality of the circumstances, the officers reasonably suspected that Brown was engaged in criminal activities, and the initial stop was constitutional.

I must now turn to the second step in the *Terry* inquiry; that is, whether the continued investigation was reasonably related to the original stop and minimally intrusive. "If [an] intrusion becomes excessive, it ceases to be a *Terry* type detention that can be justified based on reasonable suspicion and instead becomes a seizure that requires a showing of probable cause." *United States v. Hooper*, 935 F.2d 484, 494 (2d Cir. 2001).

In determining the reasonableness of an investigation, the Second Circuit and Supreme Court have looked to the length of detention, as well as the "diligence with which the agents pursued their investigation." *Id.* at 495 (citing *United States v. Place*, 462 U.S. 696, 709 (1983)). Once the officers determined that Brown was a felon, they had probable cause to continue to detain him. Thus, "[o]nly the period of time that elapsed between the initial seizure . . . and the completion of the investigation that gave rise to probable cause is relevant in determining the scope of detention." *Id.* at 494. The Government asserts, and the defense does not dispute, that Masterson's entire investigation took twelve minutes. Furthermore, there is no dispute that after confirming that Brown did not possess a weapon on his person, Masterson swiftly and efficiently

investigated whether Brown had a felony conviction. Brown's detention was minimally intrusive of Fourth Amendment interests and did not last longer than necessary to achieve its purpose. *See Tehrani*, 49 F.3d at 62 (thirty-minute investigation that involved no unnecessary delay was appropriate); *Hooper*, 935 F.2d at 497 (same). As a result, the investigative detention of Brown was constitutional.

Brown also challenges the seizure of the bullets. Officers may, if they possess the requisite reasonable suspicion, make a brief, investigatory detention of personal effects. *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 86 (2d Cir. 2002). Courts are to apply "the same standards to determine the reasonableness of a limited seizure of an individual's [effects] as [they would] to determine the reasonableness of an investigative detention of an individual." *Hooper*, 935 F.2d at 493. Thus, the analysis here is the same for the investigatory detention of the bullets and the investigatory detention of Brown, both of which are constitutional.

Brown argues that other courts have determined that the presence of ammunition alone is not so incriminating in its nature as to justify a seizure. *United States v. Blom*, 242 F.3d 799, 808 (8th Cir. 2001); *United States v. Lemons*, 153 F. Supp. 2d 948, 960-61 (E.D. Wisc. 2001). Those cases, however, are distinguishable. Both involved not a temporary investigatory detention, for which reasonable suspicion is needed, but a more permanent seizure, for which probable cause is required. "'Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.'" *Varrone v. Bilotti*, 123 F.3d 75, 80 (2d Cir. 1997) (citing *Alabama v. White*,

496 U.S. 325, 330 (1990)). Although I would agree that the events of September 9 might be insufficient to constitute probable cause, they are sufficient to constitute reasonable suspicion.

**III.    Conclusion**

For the reasons stated above, the motion to suppress, doc. 35, is DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 25th day of May 2012.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge